MILLER'S POND COMPANY, LLC *v.* ARTHUR
J. ROCQUE, COMMISSIONER OF
ENVIRONMENTAL PROTECTION
(SC 16834)

Norcott, Katz, Palmer, Vertefeuille and Zarella, Js.

Argued April 24—officially released June 3, 2003

*Richard F. Webb*, assistant attorney general, with whom, on the brief, were *Richard Blumenthal*, attorney general, and *Kimberly P. Massicotte*, assistant attorney general, for the appellant (defendant).

*Richard S. Cody*, for the appellee (plaintiff).

*Opinion*

PER CURIAM. The defendant, Arthur J. Rocque, the commissioner of environmental protection, appeals[1] from the judgment of the Appellate Court concluding that General Statutes § 22a-371[2] affords no discretion

---

[1] We granted certification limited to the following question: "Did the Appellate Court properly conclude that the actions of the defendant, the commissioner of environmental protection, was a final decision in a contested case within the meaning of the Uniform Administrative Procedure Act?" *Miller's Pond Co., LLC* v. *Rocque*, 261 Conn. 936, 806 A.2d 1064 (2002).

[2] General Statutes § 22a-371 provides: "(a) Within one hundred twenty days of receipt of an application for a permit, the commissioner shall determine if there is any additional information that he deems necessary to carry out the purposes of sections 22a-365 to 22a-378, inclusive. The applicant shall provide such information to the commissioner upon request or may request that the application be deemed complete as is.

"(b) If the applicant does not furnish the requested information, the commissioner shall publish notice of his tentative determination on the application in accordance with section 22a-6h and shall hold or waive a public hearing in accordance with the provisions of subsection (f) of this section.

"(c) If the commissioner finds that an application is complete, he shall notify the applicant by certified mail, return receipt requested. The commissioner shall also notify the applicant of the time, date and location of any public hearing to be held on the application.

"(d) Upon notifying the applicant in accordance with subsection (c) of this section that the application is complete, the commissioner shall immediately provide notice of the application and a concise description of the proposed diversion to the Governor, the Attorney General, the speaker of the House of Representatives, the president pro tempore of the Senate, the Secretary of the Office of Policy and Management, the Commissioners of Public Health and Economic and Community Development, the chairperson of the Public Utility Control Authority, chief executive officer and chairmen of the conservation commission and wetlands agency of the municipality or municipalities in which the proposed diversion will take place or have effect, and to any person who has requested notice of such activities.

"(e) As used in this section, 'municipality' means a city, town or borough of the state.

"(f) The commissioner shall hold a public hearing before approving or

to the defendant to decide whether to conduct a hearing regarding the sufficiency of the application by the plaintiff, Miller's Pond Company, LLC, for a permit to divert water and to remove gravel under the Connecticut Water Diversion Policy Act, General Statutes § 22a-365[3] et seq. *Miller's Pond Co., LLC* v. *Rocque*, 71 Conn. App. 395, 406, 802 A.2d 184 (2002). We affirm the judgment of the Appellate Court.

Pursuant to General Statutes § 22a-369,[4] the plaintiff applied to the defendant for a permit to divert water

---

denying an application, except that, when the commissioner determines that the proposed diversion (1) is necessary, (2) will not significantly affect long-range water resource management or the environment, and (3) will not impair proper management and use of the water resources of the state, he may waive the requirement for a hearing after publishing notice of his tentative decision regarding the application and of his intent to waive the requirement for a hearing in a newspaper having general circulation in the area where the proposed diversion will take place or have effect; provided the commissioner shall hold a hearing upon receipt, within thirty days after such notice is published or mailed, of a petition signed by at least twenty-five persons. If a hearing is to be held, the commissioner, at the applicant's expense, shall (A) cause notice of the time, date and location of the commencement of the hearing, a concise description of the proposed diversion, and the commissioner's tentative determination regarding the application to be published at least twice at intervals of not less than two days and not less than twenty days prior to the commencement of the hearing in a newspaper having a general circulation in the area where the proposed diversion will take place or have effect, and (B) provide the same notice to the officials listed in subsection (d) of this section not less than twenty days prior to the commencement of the hearing."

[3] General Statutes § 22a-365 provides: "Sections 22a-365 to 22a-378, inclusive, shall be known and may be cited as the 'Connecticut Water Diversion Policy Act'."

[4] General Statutes § 22a-369 provides: "The applicant shall submit an application on such form as the commissioner may prescribe and with such information as the commissioner deems necessary to fulfill the purposes of sections 22a-365 to 22a-378, inclusive, including but not limited to:

"(1) The need for the diversion;

"(2) The reasons for the diversion and the use of the diverted water;

"(3) A description of the existing water system where the diversion is proposed;

"(4) The locations of withdrawals and discharges of water the applicant proposes to divert;

"(5) The quantity, frequency and rate of water the applicant proposes

and remove gravel from a man-made lake known as Miller's Pond in Waterford. After reviewing the plaintiff's application, the defendant issued a "rejection notice," informing the plaintiff that its application was insufficient because it failed to include a potential user of the diverted water as a coapplicant pursuant to the requirements under the regulations of the department of environmental protection (department). The defendant also notified the plaintiff that the rejection notice did not bar the plaintiff from submitting a corrected application.

Thereafter, the plaintiff appealed the decision of the defendant to the trial court, claiming that it was entitled

to divert;

"(6) The length of time for which the diversion permit is sought;

"(7) The effect of the proposed diversion on public water supplies, water quality, wastewater treatment needs, flood management, water-based recreation, wetland habitats, waste assimilation, agriculture, fish and wildlife and low flow requirements;

"(8) The alternatives, if any, to the proposed diversion including a study of cost factors, feasibility and environmental effects of such alternatives;

"(9) Conservation measures instituted by the applicant prior to the application and the applicant's long-range water conservation plan to be implemented or continued after the issuance of a permit pursuant to sections 22a-365 to 22a-378, inclusive. The plan shall be prepared in accordance with the memorandum of understanding entered into pursuant to section 4-67e and shall provide for: (A) The identification of and cost effectiveness of distribution system rehabilitation to correct sources of lost water; (B) measures which encourage proper maintenance and water conservation; (C) a public information program to promote water conservation, including industrial and commercial recycling and reuse and (D) contingency measures for limiting water use during seasonal or drought shortages;

"(10) In the case of a proposed interbasin transfer the commissioner may request the applicant to file an environmental impact report on the transfer which (A) considers the effect of the transfer on present and future water uses in the proposed donor basin; (B) includes a plan for meeting water supply needs and demands in the donor basin for a minimum of twenty-five years; and (C) analyzes the alternative solutions to the water supply or wastewater problem including comparative cost analysis of the proposed transfer relative to alternative measures. In making such request, the commissioner shall indicate which aspect of such report enumerated in subparagraphs (A), (B) and (C) of this subdivision requires the submission of the environmental impact report with the application."

to a hearing to determine whether its application was incomplete. The trial court dismissed the appeal for lack of subject matter jurisdiction. Specifically, the trial court reasoned that § 22a-371 does not require that the defendant conduct a hearing to determine whether an application is complete and, accordingly, the defendant's action did not constitute a final decision in a contested case, as defined by General Statutes § 4-166,[5] pursuant to the appeal process set forth by General Statutes § 4-183[6] of the Uniform Administrative Procedure Act (UAPA). On appeal, the Appellate Court disagreed, concluding that the defendant's notice of rejection was indeed a final decision in a contested case and that under the statutory scheme prescribed in § 22a-371, a hearing was required. *Miller's Pond Co., LLC* v. *Rocque*, supra, 71 Conn. App. 407. Accordingly, the Appellate Court reversed the trial court's judgment. Id., 410. This appeal followed.

On appeal to this court, the defendant claims that there has been no final decision in a contested case within the meaning of the UAPA. Specifically, the defendant claims that: (1) there is no specific statute authorizing the plaintiff's appeal from a rejection notice; (2) there is no legal right, duty or privilege at issue because none was adjudicated by the defendant; and (3) the statutory and regulatory framework, including the department's rules of practice regarding water diver-

---

[5] General Statutes § 4-166 (2) provides: " 'Contested case' means a proceeding, including but not restricted to rate-making, price fixing and licensing, in which the legal rights, duties or privileges of a party are required by statute to be determined by an agency after an opportunity for hearing or in which a hearing is in fact held, but does not include proceedings on a petition for a declaratory ruling under section 4-176 or hearings referred to in section 4-168 . . . ."

[6] General Statutes § 4-183 (a) provides in relevant part: "A person who has exhausted all administrative remedies available within the agency and who is aggrieved by a final decision may appeal to the Superior Court as provided in this section. . . ."

sion applications, do not require a hearing or an opportunity for a hearing before the defendant issues a rejection notice due to the lack of a required signature.

"Our examination of the record and briefs and our consideration of the arguments of the parties persuade us that the judgment of the [Appellate Court] should be affirmed. The issues were resolved properly in the [Appellate Court's] concise and well reasoned [majority opinion]. . . . Because that [majority opinion] fully addresses all arguments raised in this appeal, we adopt it as a proper statement of the issues and the applicable law concerning those issues. It would serve no useful purpose for us to repeat the discussion contained therein." (Citation omitted.) *Davis* v. *Freedom of Information Commission*, 259 Conn. 45, 55–56, 787 A.2d 530 (2002).

The judgment of the Appellate Court is affirmed.